IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN CLELAND, | : | CIVIL ACTION NO. **3:CV-06-1618** |
| Petitioner | : | (Judge Munley) |
| v. | : | (Magistrate Judge Blewitt) |
| JAMES L. GRACE, et al., | : | |
| Respondents | : | |

## **REPORT AND RECOMMENDATION**

**I. Background.**

On August 21, 2006, Petitioner, John Cleland, an inmate at the State Correctional Institution at Huntingdon, Huntingdon, Pennsylvania, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] Petitioner challenges his November 3, 2004 convictions in the Carbon County Court of Common Pleas for burglary, criminal trespass, receiving stolen property, theft by unlawful taking, and conspiracy (burglary). Petitioner raises only one ground: Whether the court abused its discretion in not ruling the keys introduced by the Commonwealth were inadmissible on the grounds that the chain of custody was insufficient and the search warrant was improper. (Doc. 1, p. 9).[2]

---

[1] Petitioner originally filed his Petition in the United States District Court for the Eastern District of Pennsylvania on July 3, 2006. The Eastern District Court transferred the case to the United States District Court for the Middle District of Pennsylvania, since Petitioner was challenging his Carbon County convictions. Petitioner's case was received by this Court on August 21, 2006 and assigned the above-captioned docket number.

[2] Petitioner also filed a Motion for Leave to proceed *in forma pauperis*. (Doc. 1, Att. 2). Petitioner's Inmate Account balance attached to his *in forma pauperis* motion indicates that, as of June 16, 2006, he had a balance of $94.06. Thus, we issued an Order requiring Petitioner to pay the full filing fee in this case and denying his *in forma pauperis* Motion. Petitioner has paid the required filing fee on September 7, 2006.

Before serving the Petition on Respondents and addressing the Petitioner's habeas claims, on August 24, 2006, we directed Petitioner to submit to the Court copies of all of his state court appeals and the state court decisions, opinions and orders regarding both his direct and collateral appeals, along with the filing dates thereof.[3] The Court indicated that it would then determine if the Petitioner's Habeas Petition was timely filed under the AEDPA[4] and if his instant claims were exhausted in the state courts. (Doc. 3).[5] On September 7, 2006, Petitioner filed his Response to our Order. (Doc. 4). Along with his Response, Petitioner submitted a copy of his Petition for Allowance of Appeal which he filed with the Pennsylvania Supreme Court. Petitioner requested that, if any further state court documents are required, the Court obtain them from Respondent, since he lacked the funds to send them. (Doc. 4, p. 3).

As noted, the Third Circuit has allowed the District Court to raise the statute of limitations and exhaustion issues *sua sponte* in a § 2254 habeas proceeding; however, the Petitioner must be

---

[3]The amended provisions of 28 U.S.C. § 2244(d)(1) impose limitations on the right to pursue federal habeas relief. The amendments impose a one-year statute of limitations for § 2254 habeas petitions. *See Burns v. Morton*, 134 F.3d 109, 111 (3d Cir. 1998). There are four potential starting points for determining when the statute of limitations begins to run. The applicable period in the instant matter is the date when the Petitioner's judgment of conviction became final. *Id.* ; *Merritt v. Blaine*, 326 F.3d 157 (3d Cir. 2003). Any time devoted to pursuing a properly filed application for state post-conviction relief or other collateral relief is excluded from the limitations period. 28 U.S.C. § 2244(d)(2); *Merritt, supra*.

[4]The Third Circuit Court of Appeals, in *Holden v. Mechling*, 2005 WL 1219860 (3d Cir.), found that the District Court could *sua sponte* raise the AEDPA's statute of limitations and could summarily dismiss a § 2254 habeas petition as untimely after Petitioner is afforded notice and an opportunity to be heard. *See also U.S. v. Bendolph*, 409 F.3d 155 (3d Cir. 2005). We thus gave Petitioner Jones notice and an opportunity to be heard regarding whether his habeas petition was timely under the AEDPA.

[5]The habeas statute requires a prisoner to exhaust his claims in state court before seeking relief from federal courts. 28 U.S.C. § 2254(b)(1)(A); *see also Landano v. Rafferty*, 897 F.2d 661, 668 (3d Cir. 1990). It is well settled in the Third Circuit that the Court has discretion to raise procedural issues, such as exhaustion of state court remedies, in habeas cases, and it may do so *sua sponte*. *See Sweger v. Chesney*, 294 F.3d 506, 520-521 (3d Cir. 2002), *cert. denied*, 538 U.S. 1002 (2003).

afforded notice and an opportunity to argue why he exhausted his state court remedies and why his petition was timely under the AEDPA. *See Holden v. Mechling*, 2005 WL 1219860 (3d Cir.). We have given Petitioner notice and an opportunity to address the stated issues. Petitioner supplied the state court records which he could afford to submit. The Court directed the Respondent Carbon County District Attorney ("DA") to respond to Petitioner's Habeas Petition regarding the statute of limitations and exhaustion issues. (Doc. 6).

After an extension of time, the Respondent DA filed a response to the Petition for Habeas Corpus on November 13, 2006. (Doc. 10). The Respondent DA also filed Exhibits with his response (Doc. 10, Attachments). After an extension of time, the Petitioner submitted a Traverse supporting his Habeas Petition on December 1, 2006. (Doc. 13).

## II. State Factual History.

The Superior Court of Pennsylvania gave a thorough description of the relevant facts of this case in its September 9, 2005 Memorandum. (Doc. 10, Ex. 4). The Superior Court stated the factual background of this case as follows:

> The charges against Appellant arose from a burglary that occurred at Boyer's Supermarket in Lansford, Carbon County, on February 25, 2003, at approximately 3:37 a.m. A store surveillance camera recorded the theft of the store's portable safe by a thin, white male between six feet, one inch and six feet, three inches in height, wearing a gray hooded sweatshirt, tight jeans, and cowboy boots. The man entered the store, side-stepped an electronic floor mat, which avoided triggering an alarm, and proceeded through two separate half doors into the manager's office. He then removed a safe from beneath the office counter and ran from the store carrying the safe.
> 
> Although the store was open to the public for business at the time, the theft was not detected until several hours after the incident. Police viewed the security tape and noted the perpetrator seemed familiar with the store layout, as demonstrated by his avoidance of the front mat and knowledge of the safe's location. While interviewing store employees, the police learned a former

employee, Stacey Conrad, dated Appellant [Petitioner], and Appellant matched the general description of the man on the security tape. Police, who were unable to contact Conrad, reviewed past store security tapes. The tape of February 10, 2003 depicted Conrad and Appellant in the store at approximately 3:00 a.m. In this tape, Appellant fit the description of the unknown perpetrator, and was wearing tight jeans and cowboy boots, while Conrad wore a gray hooded sweatshirt similar in size and appearance to the one worn by the perpetrator during the crime.

On February 27, 2003, the police responded to a domestic disturbance at Conrad's mother's home in Lansford, where Conrad and Appellant were both present. Upon arrival, police arrested Conrad on an unrelated charge and noticed Appellant's clothes were the same as those of the perpetrator's from the store security tape. Appellant was arrested, and a search incident to that arrest revealed $258.00 on his person. Appellant claimed the money came from the sale of his truck, but the buyer identified by Appellant denied purchasing the truck or giving him money.

At the time of the theft, Appellant and Conrad lived with Michael Whah, Appellant's co-defendant, in Whah's home. When interviewed in prison, Conrad told investigators she was present during several conversations in which Appellant and Whah discussed stealing money from Boyer's. She stated that on February 25, 2003, Appellant and Whah left Whah's home together at approximately 2:45 a.m. and returned at 5:00 a.m., and Appellant was wearing a gray hooded sweatshirt, blue jeans, and brown boots. She further stated that the following morning, Whah told Appellant that the money was in Whah's room. Conrad identified the location within Whah's home where tools used to open the safe were kept and stated Whah told her he needed money to pay for his home. Conrad admitted to investigators she advised Appellant of how to bypass the entrance alarm, but denied other involvement in the crime.

At a subsequent police interview, however, Conrad informed police of the following: she was actually with Appellant and Whah when they drove from Whah's home to Boyer's on February 25, 2003; Whah was the driver and parked his vehicle in front of Boyer's while Appellant entered the store; Appellant exited the store with the safe and placed it in the back seat; the three of them returned to Whah's home; in the basement of the home, Appellant and Whah used various tools to cut a hole in the bottom of the safe; Conrad put her hand through the hole and withdrew approximately $13,000 in cash and checks from the safe, as well as a pair of keys; and Appellant took the money and hid it in a location unknown to her.

Based on Conrad's statement to police prior to admitting her own involvement, her knowledge of Appellant's arrest, and a confidential informant's claim he was present in Whah's home and observed large quantities of drugs, the police secured a search warrant of Whah's home to obtain evidence related to the theft, as well as evidence of drug trafficking. The search warrant was executed on March 6, 2003, and no evidence of drug activity or the theft was discovered in

> Whah's home. The police, however, discovered keys to Boyer's in a black duffle bag located in the room Appellant shared with Conrad. The Boyer's store manager identified the keys as those kept in the stolen safe. Police also found a gray hooded sweatshirt in Appellant's room.
>
> Appellant filed an *omnibus* pre-trial motion for suppression of the evidence, claiming probable cause did not exist for the issuance of the search warrant and the Commonwealth failed to establish a proper chain of custody of the evidence. The trial court found that although the information derived from the confidential informant and Appellant's illegal arrest did not create probable cause, the search warrant was nonetheless valid based on Conrad's statements. Additionally, the trial court held the alleged flaws in the chain of custody did not warrant suppression of any evidence.
>
> A jury convicted Appellant of the above-mentioned crimes on November 3, 2004. Appellant was sentenced to eighteen months' to ten years' incarceration on December 21, 2004. On January 18, 2005, Appellant filed timely notice of appeal. This appeal follows.

(Doc. 10, Ex. 4, pp. 2-5).

## III. **State Procedural History.**

On November 3, 2004, the Petitioner was found guilty, by a jury, in the Court of Common Pleas of Carbon County ("CCP"), Pennsylvania, of Burglary, Criminal Trespass, Receiving Stolen Property, Theft by Unlawful Taking and Conspiracy (to commit Burglary). (Doc. 1, p. 4 & Doc. 10, Ex. 1).

On December 21, 2004, the Petitioner was given an aggregate sentence of eighteen (18) months to ten (10) years incarceration. (Doc. 1, p. 4 & Doc. 10, Ex. 1).

On January 18, 2005, the Petitioner filed a direct appeal of his judgment of sentence with the Superior Court of Pennsylvania. (Doc. 10, Ex. 1). After briefs and argument, the Superior Court of Pennsylvania affirmed the Petitioner's conviction in its non-precedential decision filed September 9, 2005. (Doc. 10, Ex. 4). On or about September 22, 2005, the Petitioner filed a Petition for Reargument and/or Reconsideration which was denied by the Pennsylvania Superior Court on

November 17, 2005. (Doc. 10, Ex. 6).

On December 15, 2005, the Petitioner filed a Petition for Allowance of Appeal with the Pennsylvania Supreme Court. (Doc. 10, Ex. 8, p. 5). The Pennsylvania Supreme Court denied the Petitioner's Petition for Allowance of Appeal on May 9, 2006. (Doc. 10, Ex. 7). The Petitioner's judgment of conviction became final on or about August 7, 2006.

On August 21, 2006, the Petition filed the present Petition for Writ of Habeas Corpus. (Doc. 1). The current Habeas Petition was timely filed since it was filed well within one year after his judgment of conviction of conviction became final. (*Id.*).

**IV. Standard of Review.**

The Antiterrorism and Effective Death Penalty Act, enacted on April 24, 1996, revised the standard of review for cases challenging state convictions pursuant to 28 U.S.C. § 2254. *Dickerson v. Vaughn*, 90 F.3d 87, 89 (3d Cir. 1996) *citing* Antiterrorism and Effective Death Penalty Act, Pub.L. 104-132, Title I, Sec. 104, 110 Stat. 1214 (1996) ("AEDPA"). Section 2254(d), as amended, states as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254.

The "contrary to" provision contained in Section (d)(1) is evaluated as follows:

> [T]he inquiry must be whether the Supreme Court has established a rule that determines the outcome of the petition. Accordingly, we adopt O'Brien's holding that 'to obtain relief at this stage, a habeas petitioner must show that Supreme Court precedent requires an outcome contrary to that reached by the relevant state court.' In other words, it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome.

*Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 888 (3d Cir. 1999) referencing *O'Brien v. Dubois*, 145 F.3d 16, 24-25 (1st Cir. 1998).

In *Breighner v. Chesney,* this Court stated the appropriate standard for the "unreasonable application" clause. 301 F. Supp. 2d 354, 357 (M.D. Pa. 2004), *aff'd.*, 156 Fed. Appx. 539 (3d Cir. 2005)(Non-Precedential). The *Breighner* Court held that under § 2254, a federal court no longer must "accord the 'presumption of correctness' to factual findings of a state court when the state court has previously considered and rejected the Petitioner's claims for relief." The *Breighner* Court held that the "presumption of correctness does not apply in such cases," *i.e.* when federal court reviews a habeas claim that the state court unseasonably applied federal law. *Breighner v. Chesney*, 301 F. Supp. 2d 354, 357 (M.D. Pa. 2004), aff'd., 156 Fed. Appx. 539 (3d Cir. 2005)(Non-Precedential). The *Breighner* Court further held that 28 U.S.C. § 2254"subsections (d)(2) and (e)(1) simply cannot apply to the same case; they are mutually exclusive." 301 Fed. Supp. 2d at 365. The Court interpreted subsection (e)(1) to be inapplicable to proceedings under subsection (d)(2), and that subsection (e)(1) does not apply to claims under subsection (d)(2). *Id*. at 367-368.

7

The *Breighner* Court stated that:

> The federal habeas court's analysis under this subsection [(d)(2)] is limited to the record available to the state trial court--and reproduced in federal proceedings by the petitioner or "the State"--and encompasses two questions: (1) whether a factual determination of the state court was "unreasonable" in light of the state record, and (2) whether the state court's decision was "based" on that unreasonable determination. *See* 28 U.S.C. § 2254(d)(2), (f). *Id*. at 368.

The *Breighner* Court also stated that "a factual determination should be adjudged 'unreasonable' under paragraph (2) only if the court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record."(citations omitted). *Id*. at 368-369. The Court also stated that '[m]ere disagreement with an inferential leap or credibility judgment of the state court is insufficient to permit relief. Only when the finding lacks evidentiary support in the state court record or is plainly controverted by evidence therein should the federal habeas court overturn a state court's factual determination." (Citations omitted). *Id*.

In *Early v. Packer*, 537 U.S. 2 (2002), the Court indicated that as long as the state court adjudicates a claim substantively rather than procedurally, even if the federal law is not identified as the rule of the decision, it has adjudicated the claim on the merits for purposes of the AEDPA. In our case, we find that the state court adjudicated Petitioner's habeas claim substantively as a federal claim.

**V.  Discussion**.

In the instant matter, the Petitioner's Habeas claim has been presented to the state's intermediate and highest appellate courts.  Thus, contrary to the Respondent DA's contention in his Response, we find that the claim contained in the instant petition has been exhausted in state

court. (Doc. 10, pp. 3-4). We now consider the merits of Petitioner's sole Habeas claim.

In Ground One, the Petitioner claims that the trial court abused its discretion in not ruling the keys, taken from Boyer's safe, introduced by the Commonwealth inadmissible on the grounds that the chain of custody was insufficient and the search warrant was improper.[6] (Doc. 1, p. 9). Since this single claim has two major parts, we will discuss them separately, beginning with the Petitioner's chain of custody claim. The Petitioner contends that the keys, taken from Boyer's safe, found in a black bag during a search of Mr. Whah's home (where the Petitioner, Mr. Whah and Ms. Conrad were living at the time), were planted by Landsford Police Department. (Doc. 14, pp. 23-24, ¶s 9.-11.). The Petitioner points to the break in chain of custody to prove this allegation.[7] (Doc. 14, p. 25, ¶ 13.).

It is well-settled in Third Circuit that "[t]o establish a chain of custody, the government need only show that it took reasonable precautions to preserve the evidence in its original condition, even if all possibilities of tampering are not excluded." *United States v. Dent*, 149 F.3d 180, 188 (3d Cir. 1998). Additionally, "[a]bsent actual evidence of tampering, a trial court may presume

---

[6] We note that the Petitioner seems to raise other trial error claims throughout his Traverse and Memorandum supporting his Habeas Petition. (Doc. 14, pp. 19-20). Since the Petitioner's Habeas Petition only lists one Ground for relief, we will not address other issues raised for the first time by the Petitioner in his Traverse and Memorandum.

[7] "In general, in order to show a proper chain of custody, the record must show each link and also the following with regard to each link's possession of the item: (1) the receipt of the item; (2) the ultimate disposition of the item, that is, transfer, destruction, or retention; and (3) the safeguarding and handling of the item between receipt and disposition. Ordinarily, the fact of a "missing link" does not prevent admission of real evidence so long as there is sufficient proof that the evidence is what it purports to be and has not been altered in any material aspect." 29 Am. Jur. 2d Evidence § 947 (2007).

regularity in public officials' handling of contraband." *Id*. Ultimately, a trial court's decision to admit evidence, despite an imperfect chain of custody, should not be disturbed absent a clear abuse of discretion. *Id*. at 189.

The Superior Court of Pennsylvania addressed the Petitioner's chain of custody claim in a Memorandum dated September 9, 2005. (Doc. 10, Ex. 4). The Superior Court stated:

> Next, Appellant contends the trial court should have suppressed the evidence obtained in the search of Whah's [co-defendant] home because of an insufficient chain or custody. Appellant argues the Commonwealth did not establish an unbroken chain of custody, free of any possibility of tampering. Appellant concludes the keys seized during the search were inadmissible. We disagree.
> The Supreme Court of Pennsylvania has set forth the standard of review for the admissibility of physical evidence in a chain of custody dispute:
>> The admission of demonstrative evidence is a matter committed to the discretion of the trial court. Furthermore, there is no requirement that the Commonwealth establish the sanctity of its exhibits beyond a moral certainty. Every hypothetical possibility of tampering need not be eliminated; it is sufficient that the evidence, direct or circumstantial, establishes a **reasonable** inference that the identity and condition of the exhibit remained unimpaired until it was surrendered to the trial court. Finally, physical evidence may be properly admitted despite gaps in testimony regarding its custody.
>
> *Commonwealth v. Hudson*, 489 Pa. 620, 631-32, 414 A.2d 1381, 1387 (1980)(citations omitted)(emphasis in original). Additionally, so long as the circumstances in a case "support a reasonable inference that the identity and condition of the exhibits remain unimpaired, in spite of the gap in testimony regarding custody of the exhibits," we will not disturb the trial court's decision to admit the evidence. *Commonwealth v. Griffin*, 456 A.2d 171, 175 (Pa.Super. 1983).
> In the instant case, the facts support a reasonable inference the keys were what the Commonwealth purported them to be and that they were untampered. In spite of gaps in testimony regarding the keys' condition and their whereabouts from the time the police acquired them from Whah's home to the time the Commonwealth presented them at trial, the trial court found Appellant failed to prove the identification and condition of the keys were impaired. Three officers testified the condition of the keys were unchanged between the time they were seized and the time they were presented at trial. (N.T. Suppression Hearing, 9/3/04, at 8-9, 33-34, 42). Boyer's manager testified the keys introduced into evidence were the same keys he placed in the safe before the robbery. (N.T. Trial Vol. I at 165-66).

> Additionally, Conrad testified the keys in evidence were those that she removed from the safe. (*Id.* at 93). In light of the evidence contained in the record, the trial court did not abuse its discretion when it concluded the Commonwealth sufficiently established the chain of custody. *See Griffin, supra.*

(Doc. 10, Ex. 4, pp. 11-13).

We now apply §2254 (d)(2) pursuant to the *Breighner* Court's direction to Petitioner's chain of custody claim. We do not utilize the presumption of correctness of § 2254(e)(1) to Petitioner's claim contained in Ground One, which arises under §2254(d)(2), i.e. we review the Petitioner's stated habeas claim that the state court unreasonably applied federal law. We find that Petitioner is not entitled to habeas relief under subsection (d)(2) since the state courts' decisions with respect to this claim were "reasonable both in [their] application of federal law and in [their] determination of factual issues." *Id.* at 369. We find that the Superior Court's factual adjudication of the Petitioner's chain of custody claim was reasonable based on the evidence in the record. In the present case, there is no evidence provided by the Petitioner, beyond his speculation, that reflects tampering of the keys used at trial to convict him. The undisputed evidence in the record was that the keys introduced at trial were the same keys in the Boyer's safe and that they were in the same condition between the time seized and the time presented at trial. While the Petitioner did show a potential break in the chain of custody regarding the keys, the Superior Court said that despite this gap, the evidence and testimony at trial supported the reasonable inference that the identity and condition of the keys remained unimpaired. The Petitioner did not present any evidence that the identity and condition of the keys had changed in any manner form the time they were seized to the time they were presented at trial. The Petitioner has failed to show that the keys were improperly admitted into evidence by testimony. Thus, we will recommend that the Petitioner's

11

request for relief with respect to the chain of custody claim contained in Ground One be denied.

We turn now to address the second part of the Petitioner's Habeas claim, that the search warrant used to search Mr. Whah's home was improper. The Petitioner claims that "This case presents a ruse concocted against the Petitioner, by Landsford Police, to obtain a search warrant to gain access into the home of Michael Whah. . ." (Doc. 14, p. 17, ¶ 1.). The Petitioner contends that the search warrant used to search Mr. Whah's home was not based on probable cause, causing the search that followed to violate the Fourth Amendment. (Doc. 14, pp. 17-18, ¶ 1.-4.).

The polestar case of *Illinois v. Gates* guides our determination of this portion of the Petitioner's claim. 462 U.S. 213 (1983). In *Gates*, the Supreme Court stated:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.

462 U.S. at 238-239. In *Gates*, the Supreme Court made it clear that a search warrant, although partially supported by false or faulty information, may survive if it is also supported by reliable information such that probable cause still existed to issue the warrant. *Id.* at 233-35. Further, the Court stated that this determination must be made by the issuing Magistrate. *Id.* The Court also stated that police corroboration of information received from an informant of questionable reliability, will create substantial basis for concluding that probable cause existed. *Id.* at 241-42.

The Superior Court of Pennsylvania addressed the Petitioner's improper search warrant claim in a Memorandum on September 9, 2005. (Doc. 10, Ex. 4). The Superior Court stated:

12

>	Next, Appellant challenges the legitimacy of the search warrant. Appellant argues the search warrant that led to the seizure of the keys was improper because it was issued based on information obtained from an illegal arrest of Appellant. Appellant concludes these keys are therefore inadmissible under the fruit of the poisonous tree doctrine. We do not agree.
>	"Evidence seized pursuant to a legal warrant, independent of the initial illegal conduct, is not subject to suppression." *Commonwealth v. McEnany*, 667 A.2d 1143, 1149 (Pa.Super. 1995), *appeal denied*, 544 Pa. 626, 675 A.2d 1245 (1996), *appeal granted in part*, 545 Pa. 416, 681 A.2d 745 (1996). If an affidavit contains a mixture of both lawfully and unlawfully obtained information, the suppression court must determine if, absent the information obtained lawfully, probable cause continued to exist to issue the warrant lawfully. *Id*. Here the record supports the suppression court's findings, we are bound by those findings and may reverse only if the suppression court's legal conclusions are erroneous and no other legitimate grounds exist for admitting the challenged evidence. *Commonwealth v. Laatsch*, 541 Pa. 169, 172, 661 A.2d 1365, 1367 (1995). Once the information supports "a fair probability that contraband or evidence of a crime will be found in a particular place," probable cause exists for a valid search warrant. *Commonwealth v. Ryerson*, 817 A.2d 510, 514 (Pa.Super. 2003).
>	Instantly, information obtained from Appellant's arrest and information obtained from an unreliable, anonymous source about Whah's drug trafficking were properly found insufficient for probable cause. However, information in the affidavit nonetheless established probable cause that evidence of the theft would be located at Whah's home. The affidavit of probable cause sets forth the following: the officer's investigation, including his review of security tapes and the depiction of the intruder and his actions; the officer's reasons for his belief the intruder was familiar with the store and safe; the officer's viewing of separate tapes recorded several days prior to the theft in which Appellant is depicted with his girlfriend, Conrad, an employee of the store with knowledge of the store's operation, layout, and safe; and the ways in which Appellant's physical traits and dress, as observed by the officer, resembled those of the intruder. Additionally, the affidavit recites statements form Conrad that she heard Appellant and Whah discuss stealing money from Boyer's, and that she saw Appellant and Whah leave Whah's home at approximately 2:45 a.m., returning at approximately 5:00 a.m. The affidavit further notes Appellant's dress was blue jeans, brown boots, and a gray hooded sweatshirt. The information supplied in the warrant, even when the illegally obtained information is extracted, sufficiently supports the trial court's determination of a fair probability contraband or evidence of a crime would be found in the home. Therefore, the trial court properly denied Appellant's motion to suppress the fruits of the search warrant.

(Doc. 10, Ex. 4, pp. 13-15).

We now apply §2254 (d)(2) pursuant to the *Breighner* Court's direction to Petitioner's improper search warrant claim. We do not utilize the presumption of correctness of § 2254(e)(1) to Petitioner's stated claim, which arises under §2254(d)(2). We find that Petitioner is not entitled to habeas relief under subsection (d)(2) since the state courts' decisions with respect to his claim were "reasonable both in [their] application of federal law and in [their] determination of factual issues." We find that the Superior Court's factual adjudication of the Petitioner's improper search warrant claim was reasonable based on the evidence in the record as discussed above.

In the present case, there was no evidence provided by the Petitioner which showed that the search warrant lacked probable cause. The Petitioner did show that the information given by a police informant, upon which the search warrant partially relied, was unreliable. However, as the Superior Court stated, the search warrant did not lack probable cause because it was supported by the statements of Ms. Conrad, the Petitioner's girlfriend at the time of the robbery of Boyer's Supermarket and an employee of Boyer's. In short, the affidavit of probable cause to support the search warrant was based on several reliable sources of information in addition to the sole unreliable information provided by an anonymous police informant. Thus, we will recommend that the Petitioner's request for relief with respect to his improper search warrant claim be denied.

**VI. Recommendation.**

Based on the foregoing, it is respectfully recommended that the Petitioner's Habeas Corpus Petition be **DENIED**.

                                                                **s/ Thomas M. Blewitt**
                                                                 **THOMAS M. BLEWITT**
                                                                 **United States Magistrate Judge**

**Dated: August 17, 2007**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN CLELAND, | : | CIVIL ACTION NO. **3:CV-06-1618** |
| | : | |
| Petitioner | : | (Judge Munley) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JAMES L. GRACE, et al., | : | |
| | : | |
| Respondents | : | |

## **NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **August 17, 2007.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                           **s/ Thomas M. Blewitt**
                                           **THOMAS M. BLEWITT**
                                           **United States Magistrate Judge**

**Dated: August 17, 2007**