# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN CLELAND,<br>      **Petitioner** | : | No. 3:06cv1618 |
| | : | |
| | : | (Judge Munley) |
| | : | |
|       v. | : | |
| | : | |
| JAMES L. GRACE,<br>THE DISTRICT ATTORNEY OF THE<br>COUNTY OF CARBON, and<br>THE ATTORNEY GENERAL OF THE<br>STATE OF PENNSYLVANIA,<br>      **Respondents** | :<br>:<br>:<br>:<br>:<br>: | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court are petitioner's objections (Doc. 23) to the report and recommendation of Magistrate Judge Thomas M. Blewitt (Doc. 20), which proposes that we deny the instant petition for a writ of *habeas corpus*. Having been briefed, the matter is ripe for disposition.

**Background**

Petitioner is an inmate at the State Correctional Institution at Huntingdon in Huntingdon, Pennsylvania. This case grows out of petitioner's conviction in November 2004 in the Carbon County, Pennsylvania, Court of Common Pleas for burglary, criminal trespass, receiving stolen property, theft by unlawful taking and conspiracy to commit burglary. Petitioner's claim centers on whether the state courts improperly permitted evidence to be introduced at trial because the chain of

custody surrounding that evidence was insufficient and the search warrant used to obtain it was granted without cause.

The Superior Court of Pennsylvania offered a factual summary of the case. Since petitioner does not dispute the essence of these facts and does not provide any alternate iteration of them, we will recount them from the court's decision:

> The charges against Appellant arose from a burglary that occurred at Boyer's Supermarket in Lansford, Carbon County, on February 25, 2003, at approximately 3:37 a.m. A store surveillance camera recorded the theft of the store's portable safe by a thin, white male between six feet, one inch and six feet, three inches in height, wearing a gray hooded sweatshirt, tight jeans, and cowboy boots. The man entered the store, side-stepped an electronic floor mat, which avoided triggering an alarm, and proceeded through two separate half doors into the manager's office. He then removed a safe from beneath the office counter and ran from the store carrying the safe.
> Although the store was open to the public for business at the time, the theft was not detected until several hours after the incident. Police viewed the security tape and noted the perpetrator seemed familiar with the store layout, as demonstrated by the avoidance of the front mat and knowledge of the safe's location. While interviewing store employees, the police learned a former employee, Stacey Conrad, dated Appellant [Petitioner], and Appellant matched the general description of the man on the security tape. Police, who were unable to contact Conrad, reviewed past store security tapes. The tape of February 10, 2003 depicted Conrad and Appellant in the store at approximately 3:00 a.m. In this tape, Appellant fit the description of the unknown perpetrator, and was wearing tight jeans and cowboy boots, while Conrad wore a gray hooded sweatshirt similar in size and appearance to the one worn by the perpetrator during the crime.
> On February 27, 2003, the police responded to a domestic disturbance at Conrad's mother's home in Lansford, where Conrad and Appellant were both present. Upon arrival, police arrested Conrad on an unrelated charge and noticed Appellant's clothes were the same as those of the perpetrator's from the store security tape. Appellant was arrested, and a search incident to that arrest revealed $258.00 on his person. Appellant claimed the money came from the sale of his truck, but the buyer identified by Appellant denied purchasing the truck or giving him money.
> At the time of the theft, Appellant and Conrad lived with Michael Whah, Appellant's co-defendant, in Whah's home. When interviewed in prison,

2

Conrad told investigators she was present during several conversations in which Appellant and Whah discussed stealing money from Boyer's. She stated that on February 25, 2003, Appellant and Whah left Whah's home together at approximately 2:45 a.m. and returned at 5:00 a.m., and Appellant was wearing a gray hooded sweatshirt, blue jeans, and brown boots. She further stated that the following morning, Whah told Appellant that the Money was in Whah's room. Conrad identified the location within Whah's home where tools used to open the safe were kept and stated Whah told her he needed money to pay for his home. Conrad admitted to investigators she advised Appellant of how to bypass the entrance alarm, but denied other involvement in the crime.

At a subsequent police interview, however, Conrad informed police of the following: she was actually with Appellant and Whah when they drove from Whah's home to Boyer's on February 25, 2003; Whah was the driver and parked his vehicle in front of Boyer's while Appellant entered the store; Appellant exited the store with the safe and placed it in the back seat; the three of them returned to Whah's home; in the basement of the home, Appellant and Whah used various tools to cut a hole in the bottom of the safe; Conrad put her hand through the hole and withdrew approximately $13,000 in cash and checks from the safe, as well as a pair of keys and Appellant took the money and hid it in a location unknown to her.

Based on Conrad's statement to police prior to admitting her own involvement, her knowledge of Appellant's arrest, and a confidential informant's claim he was present in Whah's home and observed large quantities of drugs, the police secured a search warrant of Whah's home to obtain evidence related to theft, as well as evidence of drug trafficking. The search warrant was executed on March 6, 2003, and no evidence of drug activity or theft was discovered in Whah's home. The police, however, discovered keys to Boyer's in a black duffle bag located in the room Appellant shared with Conrad. The Boyer's store manager identified the keys as those kept in the stolen place. Police also found a gray hooded sweatshirt in Appellant's room.

Appellant filed an *omnibus* pre-trial motion for suppression of the evidence, claiming probable cause did not exist for the issuance of the search warrant and the Commonwealth failed to establish a proper chain of custody of the evidence. The trial court found that although the information derived from the confidential informant and Appellant's illegal arrest did not create probable cause, the search warrant was nonetheless valid based on Conrad's statements. Additionally, the trial court held the alleged flaws in the chain of custody did not warrant suppression of any evidence. (Doc. 10 Ex. 5 at 2-5).

3

A jury found petitioner guilty of burglary, criminal trespass, receiving stolen property, theft by unlawful taking and conspiracy to commit burglary on November 3, 2004. (Petition for Writ of *Habeas Corpus* (Doc. 1-2) (hereinafter "petition") at 4). The Carbon County Court of Common Pleas on December 21, 2004 sentenced petitioner to an aggregate sentence of eighteen months to ten years incarceration. (Id.). Petitioner appealed this judgment and sentence to the Superior Court of Pennsylvania on January 18, 2005. (Doc. 10, Ex. 1). After briefing and argument, the Superior Court on September 9, 2005 affirmed the decision. (Response to Petition for Writ of *Habeas Corpus* (Doc. 10) (hereinafter "response") Ex. 4). The Superior Court denied petitioner's motion for reargument and/or reconsideration on November 17, 2005. (Id., Ex. 6). The Pennsylvania Supreme Court denied petitioner's petition for allowance of appeal on May 9, 2006. (Id., Ex. 7).

Petitioner filed his claim in the United States District Court for the Eastern District of Pennsylvania on July 3, 2006. The case was transferred to this court on August 21, 2006 (Doc. 1). In his filing, petitioner argued that he had been arrested improperly, that searches of two residences had not been conducted after a showing of probable cause and that evidence used against him at trial had not been maintained by a proper chain of custody and should have been suppressed.

Magistrate Judge Blewitt issued his report and recommendation (Doc. 20) in this matter on August 17, 2007. The Magistrate Judge found that petitioner's claim had been exhausted in the state courts. (Id. at 9). He also concluded that the

4

Pennsylvania Superior Court's determination that the keys should not have been suppressed was reasonable based on the evidence in the record. (Id.). Though the chain of custody for that evidence was not complete, the court found that plaintiff offered no evidence to show that the keys had changed in any manner between the time they were seized and the time they were offered into evidence at trial. (Id.). The Magistrate Judge found that the Pennsylvania Superior Court properly concluded that the search warrant used to discover the evidence at Whah's home was not improperly obtained. That interpretation was reasonable both in terms of its application of federal law and its determination of factual issues. As a result, the magistrate judge recommended that we dismiss petitioner's application for a writ of *habeas corpus.*

On September 10, 2007, petitioner filed objections to the magistrate judge's report and recommendation, bringing the case to its present posture.

**Jurisdiction**

Petitioner brought this action pursuant to 28 U.S.C. § 2254. As such, we have jurisdiction pursuant to 28 U.S.C. § 1331. ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

**Legal Standard**

In disposing of objections to a magistrate judge's report and recommendation, the district court must make a *de novo* determination of those portions of the report

to which objections are made. 28 U.S.C. § 636 (b)(1)(C); see also Henderson v. Carlson, 812 F.2d 874, 877 (3d Cir. 1987). This court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The district court may also receive further evidence or recommit the matter to the magistrate judge with instructions. Id.

This case concerns petitioner's application for a writ of *habeas corpus*. To obtain such relief, a petitioner must show that his trial:

> (1) resulted in a conviction that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Deciding whether a state court decision was "contrary to" federal law requires an "inquiry" into "whether the Supreme Court has established a rule that determines the outcome of the petition." Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 888 (3d Cir. 1999). At this stage, "'a habeas petitioner must show that Supreme Court precedent requires an outcome contrary to that reached by the relevant state court.'" Id. (quoting O'Brien v. Dubois, 145 F.3d 16, 24-25 (1st Cir. 1998)). Thus, "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." Id.

**Petitioner's Objections**

Petitioner objects to the report and recommendation on two grounds. We will

6

address each in turn.

First, petitioner objects to the magistrate judge's finding that an improper chain of custody for the keys recovered by the police did not entitle him to habeas corpus relief. He argues that the police failed to establish a chain of custody for that evidence at trial, and that inconsistencies in inventories related to the keys cast doubt on the authenticity of the evidence. He also alleges that one of the officers involved in his case pled guilty to charges of planting, manufacturing and destroying evidence.

In the Third Circuit, "[t]o establish a chain of custody, the government need only show that it took reasonable precautions to preserve the evidence in its original condition, even if all possibilities of tampering are not excluded." United States v. Dent, 149 F.3d 180, 188 (3d Cir. 1998). Further, "evidence is admissible if the trial judge determines that 'there is a reasonable probability that the evidence has not been altered in any material respect since the time of the crime.'" United States v. Jackson, 649 F.2d 967, 973 (3d Cir. 1981) (quoting United States v. Luna, 585 F.2d 1, 6 (1st Cir. 1978)). A "presumption of regularity in the handling of exhibits exists," and the trial judge's determination that the showing as to identification and nature of contents is sufficient to warrant reception in evidence of the results of a test on the article, may not be overturned except for a clear abuse of discretion." Id.

The Pennsylvania Superior Court applied this standard to the question of the admissibility of the keys in this case. The court found that under Pennsylvania law,

evidence may be admitted when there exists "'a reasonable inference that the identity and condition of the exhibit remained unimpaired until it was surrendered to the trial court.'" (Repsonse, Ex. 4 at 11) (quoting Commonwealth v. Hudson, 414 A.2d 1381, 1387 (Pa. 1980)). In addition, such "'evidence may be properly admitted despite gaps in testimony regarding its custody.'" (Id.). A reviewing court will not, the Superior Court concluded, disturb a decision to admit evidence as "long as the circumstances in a case 'support a reasonable inference that the identity and condition of the exhibits remain unimpaired, in spite of the gap in testimony regarding the custody of the exhibits.'" (Id.) (quoting Commonwealth v. Griffin, 456 A.2d 171, 175 (Pa. Super. Ct. 1983)). The court further concluded that the trial court had reasonably inferred that "the keys were what the Commonwealth purported them to be and that they were untampered." (Id.). Though acknowledged gaps existed in the chain of custody, the Superior Court agreed with the trial judge that trial testimony from police officers, the store manager and Conrad established that the keys were the same ones discovered at the scene.

We find that the Superior Court's application of the law to the chain of custody was reasonable, and will reject the petitioner's objection on this point. First, the Superior Court's position on the legal standard for the admissibility of such evidence was not contrary to any federal law. The federal standard, like the Pennsylvania law, does not establish rigid requirements for preserving the chain of custody. Instead, courts are asked to determine whether the evidence presented is what the party

seeking to admit it purports it to be, and that the court is satisfied that no tampering with the evidence occurred.  Second, the Superior Court reasonably applied the law to the facts of this case.  As the petitioner points out, the chain of custody was not strictly maintained in the case, a fact that the court acknowledged.  Nonetheless, however, witnesses indicated that the keys in question were the same keys recovered from the scene, and that they had not been altered or damaged in any way.   Petitioner has submitted no evidence to the contrary.  Without more evidence that the keys were not what the Commonwealth purported them to be, the court's ruling was not unreasonable.  See, e.g., Jackson, 649 F.2d at 973 (holding that capsules of heroin were admissible, despite the fact that a criminologist could not state whether the envelope containing the evidence had been sealed and that the evidence was stored in an unsecured locker where it was not kept separate from other evidence, since no evidence indicated that the heroin had been altered).  We will therefore adopt the report and recommendation on this point.

Next, petitioner contends that the magistrate judge erred in finding that the search warrant that allowed police into Whah's home was proper.  Police officers lacked probable cause, he argues, and should not have obtained the warrant.  In determining whether probable cause exists for a search warrant, the issuing judge's task "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability

that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). In reviewing such a decision, a court must "ensure that the magistrate had a 'substantial basis for . . . [concluding]' that probable cause existed." Id. at 238-39 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)). Even when "'some factual averments in the affidavit [used to obtain a search warrant] are tainted, they do not vitiate a warrant which is otherwise validly issued upon probable cause reflected in the affidavit.'" United States v. Herrold, 962 F.2d 1131, 1138 (3d Cir. 1992) (quoting United States v. Johnson, 690 F.2d 60, 63 (3d Cir. 1982)). In a situation where police obtained a warrant based in part on information illegally obtained, courts in Third Circuit assess the validity of that warrant by asking two questions: "(1) whether a neutral justice would have issued the search warrant even if not presented with information that had been obtained during the unlawful search and (2) whether the first search prompted the officers to obtain the search warrant." United States v. Perez, 280 F.3d 318, 339 (quoting Herrold 962 F.2d at 1144). If the answer to the first question is "yes" and the second question "no," then the evidence seized through the warrant is admissible. Id.

The Pennsylvania Superior Court concluded that the keys had been properly seized from Whah's home. The court found that under state law "[i]f an affidavit contains a mixture of both lawfully and unlawfully obtained information, the suppression court must determine if, absent the information obtained lawfully, probable cause continued to exist to issue the warrant lawfully." (Response, Ex. 4 at

10

13).  In applying that legal basis to the facts of petitioner's case, the Superior Court concluded the trial court had not erred in admitting the evidence.  (Id.).  Though the affidavit that produced grounds to search Whah's home for drugs was improper and based on unreliable, anonymous sources, the court found that affidavit was sufficient to provide probable cause to search for evidence of the burglary.  That affidavit described the officer's investigation, including his review of the supermarket security tapes that showed petitioner at the store with his girlfriend, who worked there.  The affidavit also described how petitioner resembled images on the tapes of the burglar.  Statements from petitioner's girlfriend also implicated him in the crime.  All of these statements, the court found, provided probable cause to issue a search warrant related to evidence of the supermarket theft.

We agree with the magistrate judge that petitioner's claim on these grounds should be dismissed.  The Superior Court's applied a legal standard that was not contrary to any applicable federal law.  The court asked whether probable cause to issue a warrant would exist absent an illegally obtained information, and an outcome from such an inquiry would not reach a conclusion opposite of that required by federal law.  The Superior Court thus had a reasonable legal basis for its opinion. Similarly, we find that the Superior Court's application of the legal standard to the facts of this case was reasonable.  Police had an abundance of evidence that connected petitioner to the crime before they ever sought a warrant to search Whah's home.  Despite the fact that a court subsequently found that a search

warrant for drugs should not have been issued, the affidavit used this evidence to provide probable cause for the warrant as it related to the theft.  The trial court's conclusion that evidence from that search should not be excluded from the case was thus reasonable one based on the facts and applicable law.  Petitioner offers no evidence to rebut that finding, and we will therefore adopt the report and recommendation on this point as well.

**Conclusion**

For the above-stated reasons, we will dismiss the petitioner's objections and adopt the report and recommendation.  An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN CLELAND,** | : | **No. 3:06cv1618** |
| **Petitioner** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| **JAMES L. GRACE,** | : | |
| **THE DISTRICT ATTORNEY OF THE** | : | |
| **COUNTY OF CARBON, and** | : | |
| **THE ATTORNEY GENERAL OF THE** | : | |
| **STATE OF PENNSYLVANIA,** | : | |
| **Respondents** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this 24th day of October 2007, the petitioner's objections (Doc. 23) to the Report and Recommendation of Magistrate Judge Thomas M. Blewitt (Doc. 20) are hereby **DISMISSED**. The Report and Recommendation is **ADOPTED**, and petitioner's application for a writ of *habeas corpus* is **DENIED**. The Clerk of Court is directed to **CLOSE** the case.

                                                 **BY THE COURT:**

                                                 **s/ James M. Munley**
                                                 **JUDGE JAMES M. MUNLEY**
                                                 **United States District Court**